MARTINIANO *v.* BOOTH.

1. AUTOMOBILES—RUTS—WRONG SIDE OF ROAD—NEGLIGENCE—QUES-
TION FOR JURY.

   Whether or not defendant eastbound motorist on a snow-covered
   slippery highway was guilty of negligence in running off the
   paved portion of 2-lane highway into a rut immediately ad-
   jacent to the pavement and losing such control of his car as
   to cause him to skid sideways across the pavement and collide
   with westbound car in westbound lane *held*, a question for
   the jury, not a question of law (CLS 1956, § 257.634).

2. SAME—WRONG SIDE OF ROAD—NEGLIGENCE.

   The mere fact that an automobile is on the wrong side of the
   highway at the time of collision does not of itself make the
   driver thereof guilty of negligence as a matter of law, as he
   may be excused from compliance with statute requiring him
   to keep to the right side, where he skids across the highway
   as a result of striking a rut, a patch of ice, or slippery pave-
   ment through no fault of his own (CLS 1956, § 257.634).

3. SAME—WRONG SIDE OF ROAD—NEGLIGENCE—EVIDENCE.

   No error requiring reversal of verdict and judgment for defend-
   ant is found in case arising from collision of defendant's east-
   bound car with westbound car in which plaintiff was a guest
   passenger in westbound lane, where jury was properly in-
   structed that if defendant was negligent in getting onto' the
   wrong side of the snow-covered slippery road at the speed he
   was driving in violation of the statute and proximately cause
   plaintiff's injury, plaintiff would be entitled to recover, and
   evidence, in conflict as to defendant's negligence, causal con-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic §§ 280, 1069.
   Liability for damage or injury by skidding motor vehicle.   58
   ALR 264, 113 ALR 1002.
[2] 5A Am Jur, Automobiles and Highway Traffic § 264.
[3] 5A Am Jur, Automobiles and Highway Traffic §§ 1028, 1095.
[4] 53 Am Jur, Trial § 510.
[5] 53 Am Jur, Trial § 513.
[6] 3 Am Jur, Appeal and Error § 1096.
[7] 3 Am Jur, Appeal and Error § 1097.

nection, condition of ·pavement, rates of speed of the 2 cars, and distance apart when defendant got into trouble by slipping off the edge of the pavement into a rut at pavement's edge, supports verdict .found (CLS 1956, § 257.634).

4. TRIAL—INSTRUCTIONS—LAW OF THE CASE—REQUEST TO CHARGE.
A trial court must instruct the jury correctly as to the substantial issues in the cause and state to them the principles of law governing the rights of the parties, regardless ·of·whether there has been timely and proper request for any specific instructions · (Court Rule No 37, § 9 [1945]).

5. SAME—INSTRUCTIONS—LAW OF THE CASE—REQUEST TO CHARGE.
Counsel who desires a more full or a specific instruction upon any particular point has the duty timely to frame a special request to the court to charge as desired, and if he omits to do so, where the instructions given cover the essential principles of law governing the rights of the parties, he will be deemed to be satisfied with the sufficiency of the instructions as given and an error cannot then be assigned based upon the want of sufficiency on particular points of law (Court Rule No 37, § 9 [1945]).

6. APPEAL AND ERROR—TEST OF INSTRUCTIONS.
The test an appellate court applies to the instructions given a jury in the trial of a case is: Did the instructions, as given, adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case? (Court Rule No 37, § 9 [1945]).

7. SAME—INSTRUCTIONS TAKEN AS A WHOLE.
The Supreme Court will not reverse the verdict of a jury for an isolated technical error of jury instruction provided the charge taken as a whole fairly and properly advises the jury and enables the jury to make an intelligent and just disposition of the controverted issues.

SMITH, EDWARDS, and SOURIS, JJ., dissenting.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted January 8, 1960. (Docket No. 45, Calendar No. 47,985.) Decided June 6, 1960. Rehearing denied July 11, 1960.

Case by Louis Martiniano against Starr E. Booth for personal injuries sustained in automobile col-

lision. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Rothe, Marston, Mazey, Sachs & O'Connell* (*Theodore Sachs* and *Bernard M. Freid,* of counsel), for plaintiff.

*Cary, BeGole & Martin,* for defendant.

Kavanagh, J. Plaintiff, a guest passenger in a fellow employee's car, brought an action to recover for personal injuries sustained by him when a collision occurred on the north half of an east-west highway between the westbound automobile in which plaintiff was a guest passenger and the eastbound automobile driven by defendant Booth. The point of collision was on West Long Lake road approximately 1/4 mile east of its intersection with Middlebelt road in Oakland county. West Long Lake road at this point is a 2-lane, paved, undivided highway running in a generally east-west direction. Admittedly, defendant's car, which was traveling in an easterly direction, slipped off the edge of the pavement and dropped into a rut. This caused defendant's car to skid and swerve sideways onto the north half of the highway, colliding with the car in which plaintiff was riding as a passenger. This collision occurred on March 16, 1956.

The case was tried to a jury and upon its rendering a verdict of no cause for action, the court entered a judgment to that effect. Plaintiff moved for a new trial, claiming the verdict of the jury was contrary to law, contrary to the great weight of the evidence, and unsupported by the evidence. Plaintiff added the further reasons that the court erred in refusing plaintiff's number 2 request to charge (emergency doctrine); that the court erred in failing to instruct the jury that the defendant was guilty of negligence which was the proximate cause of the

collision; that the court erred in failing to clearly instruct the jury that the conduct of plaintiff's driver was not an issue for their consideration and/or that plaintiff's driver was not guilty of any negligence or contributory negligence or of any negligence or contributory negligence proximately related to the collision; and that all of the foregoing matters resulted in a miscarriage of justice.

The court in a written opinion denied the motion for new trial. Plaintiff appeals and states his question as follows:

"Is a jury verdict for defendant contrary to law and the great weight of evidence, warranting the granting of a motion for new trial, where an eastbound defendant, without excuse goes off a 2-lane highway on a curve, encounters a rut off the roadway on the snow-covered shoulder, and is thrown out of control, skidding sideways along the highway approximately 100 feet on the wrong half of the road into the westbound vehicle in which plaintiff is a guest passenger? (On such fact, should the court have instructed that defendant was guilty of negligence as a matter of law?)

"The trial court said 'No.'

"Plaintiff-appellant contends the answer should be 'Yes.'"

In order to properly understand the issues involved in this case, these additional facts are necessary:

Plaintiff testified that his driver was proceeding in a westerly direction at approximately 25 to 30 miles per hour and that the plaintiff first noticed the defendant's vehicle when it was some 50 to 75 feet away. At that moment the defendant's vehicle was on its own half of the highway facing easterly, but beginning to go out of control. Defendant's car was seen by the plaintiff to skid and swerve, finally facing south and skidding sideways in an easterly

direction with the rear end of the car slightly to the east of its front end. The rear of defendant's car was over the center line and blocking the north half of the highway when it collided with the front of the vehicle in which plaintiff was riding. Plaintiff's driver testified similarly except that he indicated he first saw defendant's car when the cars were some 135 to 140 feet apart, and he testified defendant's speed to be in excess of 65 miles per hour. The defendant himself testified that he was traveling in an easterly direction, having entered Long Lake road about 1-1/4 miles west of the point of collision. He testified he was traveling 30 to 35 miles per hour and that just before the accident he was rounding a curve to the right at approximately 30 to 35 miles per hour when his right rear wheel slipped off the pavement into a rut which was directly adjacent to the slab of concrete, and in trying to pull his car back onto the slab he turned his wheels in a clockwise direction which brought his car back on and threw it into a skid sideways going down the road.

All of the witnesses testified that the pavement was slippery and that there was snow on the ground, and defendant acknowledged that the pavement had been wet and slippery for the entire distance he traveled on West Long Lake road.

A State police trooper testified that the pavement was snowy, quite packed, packed with snow and slippery. He also testified that the shoulders were covered with snow and that the physical evidence clearly showed the point of impact in the westbound lane with tire tracks of defendant's car approximately 100 feet long, evidencing the defendant's skid to the point of impact from a rut off the pavement in the shoulder adjacent to the eastbound lane. He further testified that the rut in question was "right at the edge of the cement portion of the roadway."

Plaintiff's driver testified that he applied his brakes and stopped his car before the collision. The police officer testified that he saw no marks on the road made by the skidding or braking of the plaintiff's car. Defendant Booth testified that after he lost control of his car and when his car was sliding sideways blocking the westbound lane, he looked and, for the first time, saw the car in which plaintiff was riding some 800 to 1,000 feet away, headed west in the westbound lane and coming over the crest of the hill which was some distance to the east of the point of impact. There was no testimony that plaintiff's driver made any attempt to steer his car onto the right, that is the north shoulder of the road; all of the testimony, at least inferentially, is to the contrary.

Plaintiff in his appendix and brief does not allege he requested the trial court in writing to charge that defendant was guilty of negligence as a matter of law. Defendant, on page 3 of his appendix and brief, states as follows: "No request to charge that defendant was guilty of negligence as a matter of law was submitted."

The trial court in his opinion denying motion for new trial said:

"The real question involved in this matter, in the court's opinion, is whether or not the court should have directed the jury to find the defendant guilty of negligence as a matter of law, and left only the question of damages to be considered. In this connection it should be pointed out that counsel did not make any such request but seemed to be content to leave this question to the judgment of the jury. If the defendant was guilty of negligence as a matter of law counsel waived his right to such an instruction, and he cannot now be heard to complain."

An examination of the file discloses a request to charge was filed on July 3, 1958—the day of the

charge to the jury in the trial of the cause—reading as follows:

"Under the law of this State, there is a statutory duty of the driver of an automobile to drive his automobile on the right half of the roadway, assuming sufficient width to do so. Violation of such statutory duty is considered negligence *per se*."

(It is to be noted this request is not a proper charge without incorporating *causal connection* of the negligence *per se*.)

Whether such request was actually submitted to the trial judge before the completion of his charge is impossible to determine. It is to be noted, however, that at the conclusion of the charge counsel for plaintiff was asked if there was anything further or any corrections to the charge which he wished the court to make. Reference was then made to clarification as to future headaches and permanent injuries, but no request was made with respect to the defendant being guilty of negligence as a matter of law.

It would appear to the Court that the sole question to be determined in this case is whether or not there was an issue of fact which was properly submitted to the jury. In the instant case, although it was admitted that the defendant was on the wrong side of the highway at the time of the collision, there is no showing that he was there intentionally. Although the highway was slippery, and this was known to defendant, there is no showing that the speed at which he was driving was unreasonable considering the condition of the highway.

The controversy is whether under the circumstances, particularly in view of the snow-covered and slippery highway, defendant was guilty of negligence in running off the paved portion into the rut, or whether this could have happened through no

fault of his own.   The resolution of this controversy
and the judging of the reasonableness, or lack of it,
of defendant's conduct under all the existing circum-
stances was a matter for the jury.

This Court in a number of cases has held that the
mere fact that an automobile is on the wrong side
of the highway at the time of collision does not of
itself make the driver thereof guilty of negligence
as a matter of law.   The fact that an automobile
skids across the highway as a result of striking a rut
or a patch of ice, or because of a slippery pavement,
through no fault of the driver, has been held to ex-
cuse failure to comply with the requirement of the
statute* that the driver of a car must keep on the
right side of a street or highway.   *Leonard* v. *Hey,*
269 Mich 491 (37 NCCA 111) ; *Cosgrove* v. *Thomas,*
257 Mich 376; *Peden* v. *Carpenter,* 352 Mich 604.
The issues involved in how defendant struck the rut
and the distance of plaintiff's driver's car from de-
fendant's car at the time defendant skidded onto the
north half of the highway were factual and were
properly submitted to the jury in a charge that,
taken in its entirety, carefully protected the rights of
plaintiff as well as those of defendant.   The weight
to be given to the testimony of the different wit-
nesses and the inferences to be drawn from such tes-
timony rested in the good judgment and common
sense of the jurors.

It is certainly a factual question to be determined
by the jury as to whether or not the negligence of
defendant, if any, was a proximate cause of the ac-
cident.   Reading the charge of the court as a whole,
he properly stated the position and theories of the
respective parties.   He charged the jury as to the
questions of law, instructing them that a violation
of the State statute, requiring driving on the right

* See CLS 1956, § 257.634 (Stat Ann 1952 Rev § 9.2334).—RE-
PORTER.

side of the road except for proper passing, is negligence; and then instructed them that if that negligence was a proximate cause of the injury the defendant would be guilty of negligence, his negligence would be a proximate cause of the injury, and the plaintiff should recover. He instructed the jury further with reference to the statute that provides the operator of an automobile must drive with due caution and circumspection and at a careful and prudent speed not greater than nor less than is reasonable and proper with due regard to the circumstances. He further instructed the jury that if they found a violation of the statute, and if they found such violation was a proximate cause of the injury, then the plaintiff would be entitled to recover. He instructed the jury that the negligence of the driver of the automobile in which plaintiff was a passenger could not be imputed to plaintiff; in fact, he instructed the jury that that question would not come up for their consideration.

This Court of late has been increasingly burdened with appeals involving the correctness of instructions to juries. It is impossible to establish rules that will answer all of the particular questions relative to the issue. However, it is apparent that the bench and bar are entitled to have some guidance in this important field.

The law applicable to jury trials requires the court to instruct the jury correctly as to the law of the case, regardless of whether there has been a timely and proper request. This has been the law in Michigan from its earliest day. Mr. Justice CHAMPLIN, in *Barton* v. *Gray,* 57 Mich 622, has probably outlined the law as succinctly as it is possible to do in the following words (pp 631, 632):

"It does not appear from the record that any requests were presented on behalf of the defendant for specific instructions to the jury. Undoubtedly it

is the duty of the court to present to the jury the substantial issues in the cause, and to state to them the principles of law governing the rights of the parties, whether any specific instructions are requested by counsel or not. This duty was performed by the trial judge in this case. His instructions covered all branches of inquiry under the issues made by the pleadings; *and if counsel desired more full or specific instructions upon any particular point, it was his duty to frame a special request to the court to charge as desired.* Omitting or neglecting to do so, he will be deemed to be satisfied with the sufficiency of the instructions as given, and an exception based upon the want of sufficiency on particular points of law cannot be assigned as error." (Emphasis added.)

A modern day version of the same rule is set forth in the lucid comments of Mr. Justice VOELKER in *Huffman* v. *First Baptist Church,* 355 Mich 437, where he said (pp 445–447):

"We find in the instant case that the charge of the court, when read as a whole, adequately stated the various claims and counterclaims of the respective parties, and understandably presented the applicable rules of law and essential legal principles to help guide the jury in reaching an intelligent decision in the case. That is all either side is ever entitled to. See, generally, *Hautala* v. *Cochran,* 289 Mich 409; *Bathke* v. *City of Traverse City,* 308 Mich 1; *Graham* v. *United Trucking Service, Inc.,* 327 Mich 694.

"We are so often compelled to repeat this elementary proposition that we are moved to observe that it is probable that few trial judges, however experienced or learned, if given more time for meditation and research, would again give precisely the same jury instructions that they actually gave. Upon further reflection their instructions would doubtless be less halting and redundant, infinitely clearer and more cogent and more on target—much like the compelling jury arguments most lawyers make to

their bedroom ceilings the night after the trial is over. It follows that the job of an appellate court in appraising jury instructions (usually given by the busy trial judge immediately following the tug and heat of the trial) is not to determine whether we would select his instructions as models of literary excellence and pearls of legal wisdom were we editing a form book on the subject; rather our role is mercifully more limited and our test less severe, namely: Did the instructions as given adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case? In other words, in the idiom of the day, we simply ask ourselves: Were the instructions understandable and did they give both sides a 'fair shake'? We must not also demand the subtle reasoning of a Socrates or the gem-like prose of a Walter Pater. Few jury verdicts anywhere would stand if that were the criterion.

"Trial judges are constantly required to instruct juries, often in complicated cases, with scarcely more pause to meditate than to sip a glass of water—much (dark thought) as though the members of this Court were obliged, say, to dictate in final form their opinions from the bench immediately following oral argument. Their task is unenviable and manifestly neither counsel nor we should impose on the instructions thus given any severer requirements than we ourselves would fairly expect under similar circumstances. Given the adverse and distracting conditions under which most jury instructions must be delivered, the marvel is not that the average jury instructions are as bad as they are but rather that they are as good.

"Thus modestly tested we must conclude that the present instructions fairly pass muster, at the same time reflecting what a pity it is that most of the jury instructions which do find their way into our form books are not the carefully polished pearls alluded to but usually those impromptu shot-from-the-hip ones frequently so lame and inept and so nearly

off target that an appeal was felt necessary to determine the issue. Thus it is that some rather questionable pebbles sometimes falsely appear to emerge from our reports branded as pearls to be envied and emulated. This appearance may be dangerous."

The established rule of law above set forth has been confirmed by the adoption of Court Rule No 37, § 9 (1945), which reads in part as follows:

"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested."

The omission of detailed instructions which, if due request therefor is made, might result in a ruling that such omission constitutes reversible error, will not mean anything on appellate review—the charge otherwise being proper—in view of this rule.

The cases subsequent to the adoption of this rule have held, where no written request was submitted and counsel did not indicate the form in which he thought the jury should be charged, and where the instructions given sufficiently covered the matter, no reversible error existed. *Peden* v. *Carpenter,* 352 Mich 604.

This Court has further said it will not reverse the verdict of a jury for an isolated technical error of jury instruction provided the charge taken as a whole fairly and properly advises the jury. *Kaminski* v. *Grand Trunk W. R. Co.,* 347 Mich 417.

Mr. Justice BLACK in *Gilson* v. *Bronkhorst,* 353 Mich 148, said (pp 160, 161):

"Assignments of error aimed at a doubtful or erroneous small island of an otherwise proper jury charge are consistently approached in this Court. Quoting from *Provost* v. *Brueck,* 110 Mich 136, we said in *Bouma* v. *Dubois,* 169 Mich 422, 434:

" 'Where the charge of the court, taken as a whole, correctly states the law as applicable to the particu-

lar case; and clearly defines the issue, the fact that sentences are objectionable, when considered independent of the context, does not constitute reversible error.'

"On at least a score of occasions this Court has since so affirmed. Examples appear in *Hayes* v. *Coleman*, 338 Mich 371; *Bathke* v. *City of Traverse City*, 308 Mich 1; *Stehouwer* v. *Lewis*, 249 Mich 76 (74 ALR 844); *Holmes* v. *Borowski*, 233 Mich 407; *Hall* v. *City of Flint*, 195 Mich 638; and *Sloman* v. *Credit Guarantee Co.*, 112 Mich 258. In *Max* v. *City of Detroit*, 337 Mich 674, 678, Mr. Justice Butzel, writing for a unanimous Court, found occasion to declare the ruling with vigor and care of citation. And in *Eger* v. *Helmar*, 272 Mich 513, 517, we find what well may be said in disposition of defendant's said question 4:

" 'In the instant case, as sometimes happens, certain portions of the charge to the jury when isolated from the general context are somewhat indefinite and possibly inaccurate. But as a whole we think the charge advised the jurors of the law applicable to the case in such a manner as enabled them to make an intelligent and just disposition of the controverted issues.' "

See, also, *Lober* v. *Sklar*, 357 Mich 166, 171.

In so writing we are not unmindful of the holding in *Hicks* v. *B & B Distributors, Inc.*, 353 Mich 488, and the cases cited therein, where we held under the rule of *Pierson* v. *Smith*, 211 Mich 292, and *Hansel* v. *Hawkins*, 326 Mich 177, that failure to give an important element of the law applicable to the facts in the particular case constitutes reversible error even though not requested to so charge.

If the fact in the instant case is that no request to charge was made to the trial court with reference to negligence *per se*, we think that Justice North, writing for the Court in the case of *Dubeau* v. *Bordeau*, 291 Mich 418, properly established the

rule with respect to the law in the instant case, where
he said (p 423):

"We think the claimed error was not prejudicial;
and further, failure to give a detailed charge as to
proximate cause cannot be held to be a ground for
reversal because plaintiff made no request to charge
on that phase of the law. Court Rule No 37, § 9
(1933); *Moss* v. *Shreve,* 278 Mich 665."

If the fact is that such a request to charge was
made to the trial court, and if we assume contrary to
the actual facts in the instant case that the request
was not given in the words of the trial judge, then
we believe that the rule referred to by Justice BLACK
in *Gilson* v. *Bronkhorst, supra,* 160, in paraphrasing
*Robertson* v. *Hayes,* 261 Mich 200, would apply:

"That if * * * counsel, present at the time, ob-
served the * * * error now pressed upon us,
such counsel doubtless would have then called it to
the trial judge's attention for correction. On the
other hand, and if counsel did not then notice or
comprehend the presently-claimed prejudicial effect
thereof, it would appear farfetched to assume that
the jury took from the criticized words a controlling
instruction."

This certainly is true in the instant case where plain-
tiff's counsel was asked if he was satisfied with the
charge, and he agreed that he was except as to mat-
ters with reference to damages.

In order for the plaintiff to recover in this case it
was necessary for him to establish the negligence of
defendant and, in addition thereto, to show that this
negligence of defendant was a proximate cause of
the accident. Whether or not he has carried the bur-
den of proof on both of these elements appears to
have been a question for the jury. Negligence alone
would not establish liability. The negligence must
also be a proximate cause of the injury. The trial

court charged as follows with reference to this matter:

"One of the statutes of the State of Michigan requires that you drive on your own right hand side of the road, and if you drive over on the wrong side of the road, except when you are passing, and when it is clear so that you can pass, you are violating a State statute, and you are guilty of negligence, and if that negligence was a proximate cause of the injury, then, of course, the defendant would be guilty of negligence, his negligence would be a proximate cause of the injury, and the plaintiff should recover.

\* \* \*

"Or if you find that he (referring to defendant) was negligent but that negligence was not a proximate cause of the accident, then you also would bring in a verdict of no cause of action."

A careful reading of the entire charge indicates that the theories of the respective parties and the law applicable to the case were fairly and adequately given to the jury. It was a jury question to determine negligence, and its causal connection, in view of the condition of the pavement, the rates of speed of the 2 cars as they approached the point of collision, and especially the distance they were apart when defendant got into trouble by slipping off the edge of the pavement into a rut. Conflicts of testimony on these points existed in the instant case and were properly left to the jury to decide.

The plaintiff has had his day in court. There was sufficient factual evidence for the questions to be presented to the jury under a correct charge. More than this, the plaintiff cannot ask. We find no error requiring reversal of the judgment entered.

The judgment is affirmed, with costs to defendant.

DETHMERS, C. J., and CARR, KELLY, and BLACK, JJ., concurred with KAVANAGH, J.

SOURIS, J. (*dissenting*). The facts are stated in Mr. Justice KAVANAGH's opinion. Defendant admitted violation of section 634 of the Michigan vehicle code, PA 1949, No 300 (CLS 1956, § 257.634, Stat Ann 1952 Rev § 9.2334) by having driven his vehicle on the wrong side of the highway when it collided with the vehicle in which plaintiff was riding. Whether this statutory violation is determinative of defendant's negligence depends upon the existence or nonexistence of excuse for defendant's failure to comply with the statute's requirements. I would reverse and remand this case for retrial because the trial court's charge did not properly instruct the jury with reference to the nature of the proofs required of defendant in order to excuse his failure to comply with the statute's requirements.

I do not disagree with Mr. Justice KAVANAGH's timely comments on the trial court's obligation to correctly instruct the jury as to the law of the case regardless of the requests to charge submitted, or not submitted, by counsel. However, I believe that the charge given in this case does not correctly state the law as it relates to the subject of this defendant's negligence in the light of the peculiar fact situation presented here.

Justice KAVANAGH quotes the trial court's observation (from the opinion denying plaintiff's motion for new trial) that no request *for directed verdict* was made by plaintiff, but the original file does disclose a written request by plaintiff that the trial court instruct the jury that violation of a statutory duty is negligence *per se*. In any event, the trial court did instruct the jury that violation of the statute is negligence. Having gone that far in instructing the jury, it is my view that the trial court, even in the absence of a specific request, was obliged to fully and correctly advise the jury on the substantial issue of negligence as presented by the facts of the case and

by the theories of the parties. To do so, the jury should have been instructed on the proofs necessary to excuse such statutory violation. Prejudicial error was committed in failing to do so and in adding instructions the effect of which was to impose upon plaintiff the standard burden of proving negligence without regard to defendant's admitted violation of the statute.

After giving the usual general instructions on credibility, burden of proof, preponderance of the evidence, negligence, and proximate cause, the trial court charged the jury as follows:

"Now, as to the question of negligence. It is the law of this State that if you violate a statute of the State that is negligence. One of the statutes of the State of Michigan requires that you drive on your own right hand side of the road, and if you drive over on the wrong side of the road, except when you are passing, and when it is clear so that you can pass, you are violating a State statute, and you are guilty of negligence, and if that negligence was a proximate cause of the injury, then, of course, the defendant would be guilty of negligence, his negligence would be a proximate cause of the injury, and the plaintiff should recover. The question then will be merely damages.

"There is also a statute of the State of Michigan that provides that the operator of an automobile must drive the same with due caution and circumspection and at a speed and in such a manner as not to endanger or to be likely to endanger any person or property, and to operate his automobile at a careful and prudent speed, not greater than nor less than is reasonable and proper, with due regard to the traffic, the surface and width of the highway upon which he is travelling, and the atmospheric and other conditions then existing. A violation of that State statute is negligence, and if it was a proximate cause of the injury then the plaintiff would be entitled to

recover. When the statute says conditions of the highway, that would include the icy, slippery condition, because an ordinary prudent person would travel faster on a good, dry road than he would on ice and a slippery condition. You must drive according to the conditions. You must drive with due caution and circumspection and at a speed and in such a manner as not to endanger or be likely to endanger any person or property, having due regard to all the conditions of the road. * * *

"The only question for your consideration is whether the defendant was negligent, and whether that negligence was a proximate cause of the accident.

"If you find under the instructions that I have given you that the plaintiff has proven by a preponderance of the evidence that the defendant was guilty of negligence, which was a proximate cause of the accident, then you will go to the question of damages.

"If, on the other hand, you find that the defendant was not negligent, then, (of) course, you would bring in a verdict of no cause of action in favor of the defendant. If you find that the plaintiff has failed to prove he was negligent by a preponderance of the evidence, or if you find that he was negligent but that negligence was not a proximate cause of the accident, then you also would bring in a verdict of no cause of action."

Instructions were then given with respect to the question of damages, whereupon the court explained the theories of the parties in the following language:

"It is the plaintiff's theory in this case that the defendant was travelling at a rate of speed that was improper due to the icy condition of the road, and that when he made his turn at such a speed he lost control of his car and it went off the side into a rut, and that when he pulled out of the rut his car went over on the wrong side of the road and slid down into the car in which the plaintiff was a passenger.

"It is the defendant's claim that he was not exceeding the speed limit; that he was driving 35 miles an hour. The jury will have to determine under all the conditions whether that was a speed at which a prudent man would be driving around a curve. The defendant says he went off the road onto the shoulder and into a rut. The jury will have to determine whether a prudent man goes off the shoulder into ruts when driving on a highway. He says he pulled off and out of the rut, lost control, and went over on the wrong side of the road. That is his claim.

"I have explained the plaintiff's claim. It is up to the jury to determine under all of the circumstances under the instructions I have given you, whether or not the defendant was negligent, and whether that has been proven by a preponderance of the evidence, and whether his negligence was a proximate cause of the accident, whether that has been proven by a preponderance of the evidence."

The quoted language includes all that appears in the charge relating specifically to the issue of defendant's negligence or the absence thereof.

Defendant admitted that his vehicle was on the wrong side of the highway when it collided with the vehicle in which plaintiff was riding. Section 634 of the Michigan vehicle code, PA 1949, No 300 (CLS 1956, § 257.634 [Stat Ann 1952 Rev § 9.2334]), requires vehicles to be driven upon the right half of the roadway except in certain circumstances not pertinent here. As suggested by Mr. Justice KAVANAGH, it is still* the law of this State that violation of the vehicle code constitutes negligence as a matter of law, at least in the absence of legal

---

* Prosser, Torts (2d ed), § 34, discusses the divergent effect courts have given to such statutory violations in this country. In our own State we have been less than consistent. In *Annis* v. *Britton*, 232 Mich 291, this Court held violation of a State housing law was negligence *per se*; in *Hanna* v. *McClave*, 271 Mich 133, a wrong side of the road case, this Court held violation of the statute created a "presumption of negligence", citing *Noonan* v. *Volek*, 246 Mich 377,

excuse. *Cookson* v. *Humphrey,* 355 Mich 296; *Van Gilder* v. *C. & E. Trucking Corp.,* 352 Mich 672; and *Carlson* v. *Brunette,* 339 Mich 188. However, nowhere in the charge was the jury instructed on what constitutes such legal excuse.

I cannot agree, as suggested by Justice KAVANAGH, that plaintiff, in addition to proving defendant's violation of the statute, must also prove that defendant violated it intentionally or that defendant's violation of the statute resulted from his driving at an unreasonable speed considering the condition of the highway. Determination of defendant's negligence in the case at bar turns upon the sufficiency of *his* proof of excuse for his violation of the statute. Upon failure to prove excuse, defendant would be guilty of negligence as a matter of law, without the necessity for any additional proof by plaintiff of negligence.

In view of what has been said, some value may be found in an analysis of the instructions. As it was given, except for the passing reference to statutory violation constituting negligence, the court's

and said that the presumption exists only in the absence of evidence; but *Noonan,* relied upon in *Hanna,* involved a violation of the predecessor to present CLS 1956, § 257.402 (Stat Ann 1952 Rev and Stat Ann 1959 Cum Supp § 9.2102) in which the legislature (and not the Court) decreed, whether constitutionally or not is not necessary to decision herein, that the driver of a motor vehicle striking another motor vehicle from the rear "shall be decreed *prima facie* guilty of negligence." Finally, in *Warwick* v. *Blackney,* 272 Mich 231, another wrong side of the road case, both *Noonan, supra,* and *Hanna, supra,* were cited in the opinion, which likewise held that proof of violation of the statute makes out only a *prima facie* case of negligence but that "this *presumption* (emphasis added) may be rebutted" and exists only in the absence of evidence. Presently, however, we are back to our original *Annis* posture where statutory violations constitute negligence *per se.* See *Cookson* v. *Humphrey,* 355 Mich 296.

Still other courts consider such statutory violations only as evidence of negligence. See Prosser, *supra,* and cases cited at p 161 thereof. Why it should be anything more than evidence of breach of a standard of care legislatively established is not clear, but the mechanical judicial conclusions of negligence are yet (but hopefully not for long) required by our recent precedents. For an illuminating discussion of this subject, see Justice SMITH's opinion in *Richardson* v. *Grezeszak,* 358 Mich 206, 233.

charge followed the classic pattern used in the automobile negligence case where there is present no proof of negligence by admission (as there was here) of a statutory violation. The court's charge advised the jury that plaintiff had to prove defendant's negligence by a preponderance of the evidence relating to defendant's speed, weather conditions and the physical condition of the road and its shoulder. The jury should have been advised that defendant was guilty of negligence as a matter of law by virtue of his admitted violation of the statute unless *he* proved that he was excused from his failure to obey the statute by events or circumstances beyond his control, and the events and circumstances legally sufficient to constitute excuse should have been described by the court. Further, the jury should have been instructed that plaintiff would bear the standard burden of proof of negligence only in the event that the jury found excuse or justification for defendant's violation of the statute. By its failure to include such instruction, the court's charge did not correctly state the law applicable to this case.

The importance of the distinction between the charge given and the charge which should have been given is well illustrated by the case at bar. A general verdict having been rendered, who can tell whether plaintiff was denied recovery, for example, because *he* failed to meet the charge's requirement that *he* prove by a preponderance of the evidence (in addition to defendant's admitted violation of the statute) that defendant's speed was unreasonable, or whether he was denied recovery because the jury failed to find a causal connection between defendant's negligence and the collision? I would reverse and remand for new trial, with costs to plaintiff.

Smith and Edwards, JJ., concurred with Souris, J.